## NOS. 15-1412; 15-1476

ORAL ARGUMENT HAS NOT YET BEEN SCHEDULED

In The

# United States Court of Appeals

For The District of Columbia Circuit

## SCOMAS OF SAUSALITO, LLC,

*Petitioner/Cross–Respondent,*

V.

## NATIONAL LABOR RELATIONS BOARD,

*Respondent /Cross–Petitioner,*

## UNITE HERE, Local 2850

*Intervenor for Respondent.*

### ON APPEAL FROM THE NATIONAL LABOR RELATIONS BOARD

### PAGE PROOF BRIEF OF PETITIONER/CROSS–RESPONDENT

Diane Aqui, Bar No. 56287
SMITH DOLLAR PC
Attorneys at Law
404 Mendocino Avenue, Second Floor
Santa Rosa, California 95401
Telephone:  (707) 522-1100
Facsimile:  (707) 522-1101

*Counsel for Petitioner/Cross-Respondent SCOMAS OF SAUSALITO, LLC*

513696

## CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES, AND CORPORATE DISCLOSURE STATEMENT

### (A) Parties and Amici

Based on the knowledge and information reasonably available to Petitioner, the following persons are parties, intervenors, and amici in this Court:

- Scomas Of Sausalito, LLC

- National Labor Relations Board

- Unite Here, Local 2850

This case was not brought in the District Court. Therefore, no parties, intervenors, or amici appeared in this case before the District Court.

### (B) Rulings Under Review

The ruling at issue before this Court is that portion of the Order of the National Labor Relations Board in *SCOMAS OF SAUSALITO, LLC AND UNITE HERE, LOCAL 2850, 362 NLRB NO. 174 (2015)* entered on August 21, 2015, finding that Petitioner's unilateral withdrawal of recognition from the union was in violation of Section 8(a)(5) and (1) of the National Labor Relations Act (codified at 29 U.S.C. § 158(a)). A copy of the National Labor Relations Board's Order, written by Members Hirozawa, Johnson and McFerran, is filed herewith. The ruling at issue may be found at page 6 of the Order.

## (C) Related Cases

This case has not been previously on review before this Court or any other Court. Counsel for Petitioner SCOMAS OF SAUSALITO, LLC, is unaware of any other related cases currently pending in this Court or in any other court.

# TABLE OF CONTENTS

Page

CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES, AND CORPORATE DISCLOSURE STATEMENT............................................. i

TABLE OF CONTENTS ........................................................................... iii

TABLE OF AUTHORITITES ...................................................................... v

GLOSSARY ........................................................................................... ix

JURISDICTIONAL STATEMENT ................................................................ 1

STATEMENT OF THE ISSUES FOR REVIEW ................................................ 2

STATUTES AND REGULATIONS ................................................................ 3

STATEMENT OF THE CASE ...................................................................... 4

    A. The Employees' Decertification Petition........................................... 4

    B. Scomas' Subsequent Withdrawal of Recognition .............................. 4

    C. The Union's Revocation Signatures and Unfair Labor Practice Charge...... 5

    D. The Union's Failure to Give Notice of Restored Majority Status................ 6

    E. Procedural History ...................................................................... 6

        1. The Unfair Labor Practice Hearing ........................................... 6

        2. Scoma's Exceptions and the View of Board Member Johnson .............. 8

SUMMARY OF ARGUMENT .................................................................... 9

STANDING ........................................................................................... 11

ARGUMENT ...................................................................................................... 12

   A. Standard of Review...................................................................................... 12

   B. The NLRB's Continued Application of *Levitz* is Unworkable and
      Inconsistent with the Act ........................................................................... 12

     1. The *Levitz* Rule ..................................................................................... 12

     2. The Application of *Levitz* as a Strict Liability Rule is Forcing a Square
       Peg into a Round Hole........................................................................... 14

     3. *Levitz* Should Be Made to Comply with the Purposes of the Act......... 17

   C. Any Rule of Law that States "To Be Done at the Employer's Peril" is
      Arbitrary and Capricious ........................................................................... 19

   D. Board Members Have Urged Modification of *Levitz* for the Last 15
      Years ......................................................................................................... 20

   E. Further Instruction Provided in *Johnson Controls, Inc.* .............................. 22

   F. Appropriate Remedy Needs to be Aimed at Effectuating the Employees'
      Desire ....................................................................................................... 24

   G. An Election is the Appropriate Remedy...................................................... 24

CONCLUSION ................................................................................................. 27

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITITES

**Page(s)**

## CASES

*Aero Engineering Corporation and Lodge 1303, International*
   *Association of Machinists and Aerospace Workers,*

   *AFL-CIO*, 177 N.L.R.B. 176 (1969).................................................................. 19


*Allentown Mack Sales & Service, Inc. v. NLRB,*

   522 U.S. 359 (1998)....................................................................................... 12


*Allied Industries vs. Bridgestone,*

   47 Fed. Appx. 449 (9th circuit 2002).............................................................. 25


*Alpha Assocs.,*

   *344* N.L.R.B. *742 (2005)* ............................................................................... 21


*B.A. Mullican,*

   350 N.L.R.B. 493 (2007) ............................................................................... 21


*Badlands Golf Course,*

   350 N.L.R.B. 264 (2004) ............................................................................... 21


*Celanes Corp. of America,*

   95 N.L.R.B. 664 (1951). ................................................................................ 13


*Daisy's Originals, Inc. v. NLRB,*

   468 F.2d 493 (5th Cir. 1972) .......................................................................... 26

*\*Chief Authorities are Designated by an Asterisk*

*Eden Gardens Nursing Home*,

   339 N.L.R.B. 71(2003) ....................................................................................... 21

*Griffith Co. v. NLRB*,

   545 F.2d 1194 (9th Cir. 1976) ........... ................................................................... 2

*Highlands Regional Med. Ctr.*,

   347 N.L.R.B. 1404(2006) ................................................................................. 21

*HQM of Bayside*,

   348 N.L.R.B. 758 (2006) .......................................................................... 21, 26

*International Brotherhood of Electrical Workers v. Foust*,

   442 U.S. 42 (1979).......................................................................................... 24

*Johnson Controls, Inc.*,

   Case 10-CA-151843 (2016) …. ………………………………..............19, 22, 23

*Kovach v. NLRB*,

   229 F.2d 138 (7th Cir. 1956) ............................................................................ 2

*Levitz Furniture Company of the Pacific*,

   333 NLRB 717 (2001) ...................................................... 2, 8, 9, 10, 11, 12, 13,
   14, 15, 16, 17, 19, 20, 21, 22, 25, 26

*Litton Fin. Printing v. NLRB*,

   501 U.S. 190 (1991). ...................................................................................... 12

*Madison Indus.*,

   349 N.L.R.B. 1306 (2007) ............................................................................... 21

*Mastronardi Mason Materials*,

   336 N.L.R.B. 1296 (2001) ................................................................ 21


*NLRB vs. HQM of Bayside, LLC*,

   518 F.3d 256 (4th Cir. 2008)...................................................... 18, 21


*NLRB v. Nu-Southern Dyeing & Finishing, Inc.*,

   444 F.2d 11 (4th Cir., 1971) ............................................................ 27


*\*Parkwood Developmental Center,*

   347 N.L.R.B. 974 (2006) ......................................... 8, 18, 21, 22, 26


*Retail Clerks Union, etc. v. NLRB,*

   348 F.2d 369 *(*D.C. Cir. 965*)* ...................................................... 11, 12


*Seaport Printing & Ad Specialties*,

   344 N.L.R.B. 354 (2005) ................................................................ 21


*Siemens Bldg. Techs.*,

   341 N.L.R.B. 1108 (2005) .............................................................. 21


*Skyline Distribs v. NLRB*,

   99 F.3d 403 (D.C. Cir. 1996)........................................................... 26


*Textile Workers Union v. Lincoln Mills,*

   353 U.S. 448 (1957)........................................................................ 17


*\*Vincent Industrial Plastics v. NLRB,*

   209 F.3d 727 (D.C. Cir. 2000).................................................... 25, 26

*Wilson & Co. vs. NLRB,*
    162 F. 2d 310 (1947)................................................................. 16, 17

## STATUTES

29 U.S.C. § 152 ......................................................................... 1

29 U.S.C. § 157 ......................................................................... 3

29 U.S.C. § 158(a)...................................................................... i

29 U.S.C. § 158(a)(1)................................................................. 3

29 U.S.C. § 160 ......................................................................... 2

29 U.S.C. §§ 160(a)-(c)............................................................. 1

29 U.S.C. § 160(f)................................................................. 1, 11

## RULES

D.C. Circuit Rule 28(a)(4) ......................................................... 1

Federal Rule of Appellate Procedure 15(a)(1)........................... 2

Federal Rule of Appellate Procedure 28(a)(4)........................... 1

Federal Rule of Appellate Procedure 28(a)(5)........................... 2

## GLOSSARY

| | |
|---|---|
| ***Order or Board's Order*** | Decision issued by the National Labor Relations Board on August 21, 2015, which is the subject of this Petition for Review. |
| ***Scomas*** | Petitioner, Scomas of Sausalito, LLC. |
| ***Union*** | Unite Here, Local 2850 |
| ***ALJ*** | Administrative Law Judge |

## JURISDICTIONAL STATEMENT

Pursuant to Federal Rule of Appellate Procedure 28(a)(4) and D.C. Circuit Rule 28(a)(4)), Scomas of Sausalito, LLC, ("Scomas") submits that Respondent National Labor Relations Board ("NLRB" or "the Board") had jurisdiction over the underlying dispute which is the subject of this Petition pursuant to 29 U.S.C. §§ 160(a)-(c). Section 160(a) states that the Board "is empowered to prevent any person from engaging in any unfair labor practice . . . affecting commerce." Sections 160(b) and (c) give the Board the authority to issue complaints, conduct hearings, and issue orders with regard to a charge that any person is engaging in an unfair labor practice. The issue before the Board in this case was a labor dispute affecting interstate commerce between an employer and a labor organization as defined by 29 U.S.C. § 152. (Order at 3.)[1] The Court has jurisdiction to hear this petition pursuant to 29 U.S.C. § 160(f), which states that any person aggrieved by a final order of the National Labor Relations Board may obtain a review of such order in the United States Court of Appeals for the District of Columbia. Scomas is aggrieved by the Board's Order because it is the entity against whom the Order was entered. (Order at 1.)

---

[1] References to the reporter's transcript of the July 31, 2013 hearing before the ALJ on this matter are designated as "RT ___"; to Joint Exhibits at that proceeding as "Joint Ex. ___"; to other Exhibits as "Respondent Ex. ___ and General Counsel Ex.___and to the Board's Order as "Order at [page number]."

This Petition is timely. The Board issued its Order on August 21, 2015. (*Id.*) Federal Rule of Appellate Procedure 15(a)(1) states that "[r]eview of an agency order is commenced by filing, within the time prescribed by law, a petition for review with the clerk of a court of appeals authorized to review the agency order." Neither Rule 15(a)(1) nor 29 U.S.C. § 160, which sets forth the procedure for judicial review of the Board's orders, sets a deadline for the filing of a petition for review. Recognizing this lack of a set deadline, courts have held that "[t]he party challenging the timeliness of a petition must show that more time has elapsed than reasonably necessary and that it was prejudiced by the delay." *Griffith Co. v. NLRB*, 545 F.2d 1194, 1197 n.3 (9th Cir. 1976); *Kovach v. NLRB*, 229 F.2d 138, 141 (7th Cir. 1956). In this case, Scomas filed the Petition for Review on November 10, 2015.

## STATEMENT OF THE ISSUES FOR REVIEW

Pursuant to FRAP 28(a)(5), Scomas submits that the following issues are before the Court for review:

1.    Whether the underlying policies of the National Labor Relations Act, as amended, require modifying the strict liability standard for an employer's lawful withdrawal of recognition as set forth in *Levitz Furniture Company of the Pacific* 333 NLRB 717 (2001).

2.      Whether the Respondent, the National Labor Relations Board, erred in finding that the underlying policies of the National Labor Relations Act, as amended, do not require that a Union has a duty to present evidence of reacquired majority support within a reasonable amount of time after Petitioner-Employer withdraws recognition; and

3.      Whether the Respondent, the National Labor Relations Board, erred by requiring as a remedy an affirmative bargaining order instead of an election in situations where employees have been induced to waive their right to an election only by Union gamesmanship.

## STATUTES AND REGULATIONS

Following is the text of the two main statutes at issue in this appeal:

29 U.S.C. § 157:

Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158 (a)(3) of this title.

29 U.S.C. § 158(a)(1):

It shall be an unfair labor practice for an employer to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title.

## STATEMENT OF THE CASE

Respondent, Scomas of Sausalito, LLC is a restaurant, and its employees (servers, dishwashers, bartenders, hostesses and bussers) have been represented by Unite Here, Local 2850 since at least 2000. (RT 57:22-25; 58:1-2).

### A.    The Employees' Decertification Petition.

The collective bargaining agreement between Scomas and Unite Here expired at the end of September 2012. Neither the Union nor Scomas requested negotiations. (RT 51:4-9; RT 59:6-14).

On October 28, 2013, thirteen months after the expiration of the contract, Scomas received a Decertification Petition signed by 29 of the 54 members of the bargaining unit. The Decertification Petition contained the following statement, "Should the undersigned employees make up 50% or more of the bargaining unit represented by Unite Here Local 2850, the undersigned employees hereby request that Scoma's of Sausalito withdraw recognition from this union immediately as it does not enjoy the support of a majority of employees in the bargaining unit." (RT 59:19-25; 68:20-69:2) (Respondent Ex. 1).

This petition was filed with the National Labor Relations Board on October 28, 2013. (Respondent Ex. 1).

### B.    Scomas' Subsequent Withdrawal of Recognition.

After receipt of the Petition for Decertification, Scomas reviewed the 29 employee signatures, and compared the signatures to exemplar signatures on I-9's and W-4's to ensure authenticity. Scomas also confirmed that that the number of bargaining unit employees on the payroll was 54, and then calculated the percentage of signatures on the decertification petition was 54% (29/54). (RT 60:12-22) (Joint Ex. 4 and 5).

In reliance on the signatures on the Decertification Petition, and as instructed by the employees via the Decertification Petition, Scomas withdrew recognition from the Union on October 31, 2013.   (RT 62:4-6) (Joint Ex. 3).

On November 6, 2013, assumedly in reliance on Scomas' withdrawal of recognition, the employees withdrew their Decertification Petition.

**C.    The Union's Revocation Signatures and Unfair Labor Practice Charge.**

On November 11, 2013, five days after the employees withdrew their Decertification Petition, and 10 days after Scomas withdrew recognition, the Union filed an unfair labor practice charge with the NLRB alleging that the Union had not actually lost majority support at the time Scomas withdrew recognition on October 31, 2013.  Scomas later learned that six of the 29 employees who had signed the Decertification Petition had subsequently on October 29 and 30, 2013, signed a Union document revoking their signatures. These revocations decreased the

percentage of signatures from a majority of 54% to 46%. (General Counsel Ex. 3).

### D. The Union's Failure to Give Notice of Restored Majority Status.

Between October 28, 2013 when Scomas first received the Decertification Petition and October 31, 2013 when recognition was withdrawn, Scomas received no evidence from the Union or the employees that conflicted with the evidence Scomas relied upon to withdraw recognition.   Even after Scomas withdrew recognition on October 31, 2013, and the employees withdrew their Decertification Petition on November 6, 2013, Scomas received no information from the Union which conflicted with the available objective evidence (i.e., Decertification Petition) that the Union did not have the majority support of the bargaining unit employees.   (RT 214:8-9).

There was no evidence that the employees were coerced to sign the Decertification Petition, nor was there any evidence of employer assistance, taint, or any other unfair labor practices regarding the decertification petition. (Order at 3).

### E. Procedural History

1.    The Unfair Labor Practice Hearing. Unite Here, Local 2850, filed the unfair labor practice charge with the NLRB on November 11, 2013. The

case was tried before administrative law judge Mary Miller Cracraft on November 4-5, 2014 in San Francisco, California. (Order at 3.)

The evidence showed that at no time did the Union disclose the revocation signatures to Scomas even *after* the withdrawal of recognition. (Order at 6).

Scomas attempted to question the witnesses who had subsequently signed the Union's petition as to their intent and understanding when signing, and whether they wanted the Union to represent them. (General Counsel Ex. 3)  (RT 156:6-13; RT 128:12-20).  The ALJ sustained the General Counsel's objections and ruled that subjective evidence was not relevant.

Scomas also attempted to present evidence of a second decertification petition signed on November 4, 2014 by seventy-two percent (72%) of Scoma's bargaining unit employees to demonstrate changed circumstances within said unit, which is directly relevant to the appropriateness of a remedial bargaining order. This was denied. (Rejected evidence file, and attached Exhibit A) (Tr. 67:16-68:16; 69:3-12; Respondent's Ex. 2; Tr. 65:2-68:19; 69:3-13)

On February 23, 2015, the ALJ issued her Report and Recommendations, finding that the 6 revocation signatures were not coerced, the Union had not actually lost majority support at the time Scomas withdrew recognition due to the 6 revoked signatures (Order 3), and that Scomas violated Section 8 (a) (5) of the Act. An affirmative bargaining order was recommended.

2.    Scoma's Exceptions and the View of Board Member

Johnson.  Scomas filed exceptions to the ALJ's recommended Order on April 10,

2015.  On August 21, 2015, the Board issued the Order that is the subject of this

Petition, affirming the ALJ's findings.   In a footnote to the Order, the Board

highlighted one Member's position urging modification of the rule of law used:

"Were the issue raised in exceptions, however [Member Johnson] would modify

the *Levitz* standard by requiring that unions present evidence of reacquired

majority support within a reasonable amount of time, a requirement proposed by

former Chairman Battista in *Parkwood Developmental Center* 347 NLRB 974,

975 fn. 8 (2006). In Member Johnson's view, imposing an affirmative disclosure

obligation would be more consistent with the Act's fundamental polices of

promoting stability in bargaining relationships and protecting employee free

choice on the matter of collective bargaining representation. In contrast, a policy

allowing unions to withhold evidence of reacquired majority support

unnecessarily disrupts the bargaining relationship and encourages gamesmanship

between parties. In this case, for instance, the union's failure to give notice of its

restored majority status misled the Respondent into a disruptive unlawful

withdrawal with the collateral effect of precluding employees from filing a

decertification election petition with the Board."  (Order at 1)

Contrary to Member Johnson's assertion, Scomas had specifically and without ambiguity raised this issue in exceptions (Respondent's Exception 6), and therefore, filed a Motion for Reconsideration on September 1, 2015. This Motion was decided and denied on October 29, 2015, after Member Johnson had retired. Chairman Pearce and Members Hirozawa and McFerran stated in the denial, "Former Member Johnson's personal view that the Board should modify the *Levitz* standard in a future appropriate case does not support the Respondent's supposition that the Board did not fully consider all of the Respondent's exceptions to the application of that standard in this case." (Order Denying Motion for Reconsideration, p.2 fn 3).

The Board's failure to modify *Levitz* in this very appropriate case is inconsistent with the Act. The Board's failure to order an election rather than an affirmative bargaining order is irrational as the bargaining order ignores at least 46% of the employees' wishes (or, even 72% based on the second Decertification petition filed). Because of the Board's reluctance to modify *Levitz* and its irrational insistence on following unjust and unfair precedent, Scomas filed its Petition for Review.

## SUMMARY OF ARGUMENT

The current standard for evaluating an employer's unilateral withdrawal of recognition from a labor union is *Levitz Furniture Company of the Pacific*, 333

NLRB 717 (2001).  Under *Levitz*, an employer's withdrawal of recognition is unlawful unless the employer can prove, by a preponderance of objective evidence, that the union had in fact lost majority support at the time of the withdrawal of recognition.

In certain circumstances and fact patterns, the *Levitz* standard is unworkable, punitive, and contrary to the underlying policies of the Act. Prior Board decisions have recognized this and urged modification of this standard in appropriate cases.

The facts in this instant case where the Union failed to provide notice of reacquired majority support *after* withdrawal of recognition, and where the employees actually withdrew their Decertification Petition in reliance on the employer's withdrawal, all of which occurred in a very short 14 day time period, are most appropriate not just to modify the *Levitz* standard to require an affirmative union disclosure obligation of reacquired majority support after an employer's unilateral withdrawal of recognition, but to advance an alternative remedy other than the typical bargaining order which, in this case, only serves to reward the labor union for disingenuous behavior.

The alternative remedy suggested is restoration of the status quo to the time just before the employer's withdrawal.  Procedurally, this can be done by invalidating the employer's withdrawal of recognition, and/or, where there has been a Decertification Petition filed, reinstating the employees' withdrawn

Decertification Petition, or simply ordering an election to be held if the percentage of valid signatures on the withdrawn Decertification Petition, absent the revoked signatures, is 30%. [2]

Prior Board decisions have urged modification of this decision (discussed *infra*), recognizing that the strict application of *Levitz* to all fact patterns is essentially forcing a square peg into a round hole. Now is the time for the 15 year old standard in *Levitz* to be corrected so employees are neither the pawns of a labor union or the victims of gamesmanship, and the policies of the Act are better effectuated.  Employee choice is paramount in labor proceedings, and the adjustment and modification of *Levitz* is the right and fair thing to do for employees.

## STANDING

Scomas has standing to bring this Petition for Review pursuant to 29 U.S.C. § 160(f), which states that any person aggrieved by a final order of the National Labor Relations Board may obtain a review of such order. This Court has held that "standing to appeal an administrative order as a 'person aggrieved,' 29 U.S.C. § 160(f), arises if there is an adverse effect in fact, and does not . . . require an injury cognizable at law or equity." *Retail Clerks Union, etc. v. NLRB*, 348 F.2d 369, 370 (D.C. Cir. 1965). In this case, Scomas is aggrieved by the Board's Order. The

---

[2] 30% is the threshold level for filing a decertification petition, and conducting a secret ballot election.

Order has an "adverse effect in fact" on Scomas, as the Board has ordered that it inform its employees that it has violated their rights under federal law. (Order at 1.) Scomas thus has standing under *Retail Clerks Union*.

## ARGUMENT

### A. Standard of Review.

The NLRB's legal conclusions are reviewed *de novo*, and its interpretations of the NLRA are upheld only if they are rational and consistent with the Act. *Litton Fin. Printing v. NLRB*, 501 U.S. 190, 201 (1991).

"[C]ourts must defer to the NLRB, [unless]. . . the application of that standard by the NLRB to the facts of the case was irrational, and inconsistent with the Act." *Allentown Mack Sales & Service, Inc. v. NLRB.* (1998) 522 U.S. 359.

### B. The NLRB's Continued Application of *Levitz* is Unworkable and Inconsistent with the Act.

1.   The *Levitz* Rule.   In *Levitz Furniture Company of the Pacific*, 333 NLRB 717 (2001), an employer was presented with a decertification petition signed by the majority of employees.  Despite the Union informing the employer that it had reacquired majority support after the petition had been signed, the employer still withdrew recognition.  The employer argued that it merely had to show the withdrawal was based upon a good-faith doubt of the union's majority status at the time recognition was withdrawn.

Until *Levitz* was decided, an employer could legally withdraw recognition of an incumbent union without actual proof of the lost majority status, relying instead on only a good-faith doubt of the lost status. This good faith standard was set forth in 1951 in Celanes *Corp. of America* 95 NLRB 664 (1951) and governed for 50 years.

However, in 2001, the NLRB in *Levitz* set aside the good faith doubt standard and the Board announced its current standard for evaluating employer withdrawals of recognition. Under *Levitz*, an employer withdrawal of recognition is unlawful unless the employer can prove, by a preponderance of objective evidence, that the union had in fact lost majority support at the time of the withdrawal of recognition. "We emphasize that an employer with objective evidence that the union has lost majority support—for example, a petition signed by a majority of the employees in the bargaining unit—*withdraws recognition at its peril*. If the union contests the withdrawal of recognition in an unfair labor practice proceeding, *the employer will have to prove by a preponderance of the evidence* that the union had, in fact, lost majority support *at the time the employer withdrew recognition*. If it fails to do so, it will not have rebutted the presumption of majority status, and the withdrawal of recognition will violate Section 8(a) (5)." *Id.* at 725 (emphasis added).

The Board's decision in *Levitz* to require absolute proof of the union's loss of majority support rested upon the theory that continued union majority status is important to each of the Act's policies: promotion of stability in bargaining relationships, protection of the employees' right to select representation, and encouragement of collective bargaining.

However, the strict application of *Levitz* over the last 15 years has shown exactly the opposite and has provided uneven and harmful results.

2.      The Application of *Levitz* as a Strict Liability Rule is Forcing a Square Peg into a Round Hole. For certain fact patterns, *Levitz* is absolutely correct.   Clearly, industrial stability is protected because employers may not continually refuse to bargain with a union simply because of a good-faith doubt. Good-faith doubt should not be sufficient to disrupt the bargaining relationship. Employers should not be permitted to withdraw recognition without absolute proof of the union's loss of majority support.

In some situations, however, this absolute standard, which is essentially a strict liability standard, is unworkable and does not further the Act's policies. Employers should be permitted to withdraw recognition when they have a good-faith *certainty* based on a petition signed by a majority of the employees in the bargaining unit.  (Or, at the very least, withdrawal of recognition under those circumstances should not be a violation of the Act).

*Levitz* simply goes too far when it holds that an employer *withdraws recognition at its peril* when relying on what it concedes is the most objective evidence of loss of support----- a petition signed by a majority of the employees in the bargaining unit.

First, a signed employee petition as Scomas had is the archetypical example of evidence of a loss of majority support.   It does not just raise doubts in an employer's mind as to employee sentiment----it actually proves employee sentiment. Employers who rely on this type of objective evidence to determine majority support should not be treated in the same manner as an employer who is relying on subjective evidence or evidence other than signatures on a withdrawal petition (for example, a polling report), or even those employers who are relying on stale signatures, which might be many months old.

Second, if an employer cannot rely on a valid signed employee petition as Scomas did here, what then can they rely on? Why does an employer have to act "at its own peril" when relying on the absolute proof of a signed employee petition? What then would be absolute proof of an actual loss of majority support?

In a General Counsel memorandum regarding *Levitz Furniture Company of the Pacific*, the NLRB has stated that absolute proof of actual loss "requires a showing of an actual numerical loss of a union's majority support.  To meet its burden of proof, an employer may show actual loss though "untainted, valid

evidence, such as a petition, that establishes that a numerical majority of unit employees no longer desires representation from the incumbent union. The union may then rebut this numerical evidence by showing that it is unreliable or was obtained through unfair labor practices." *See generally* Memorandum from Arthur F. Rosenfeld, General Counsel, National Labor Relations Board, to All Regional Directors, Officers-in-Charge and Resident Officers (Oct. 22, 2001), *available at* http://www.nlrb.gov/gcmemo/gc02-01.html [hereinafter Rosenfeld].

In Scomas' case, the General Counsel did not rebut the numerical evidence by showing that it was unreliable, or obtained through an unfair labor practice, or that Scomas calculated wrong. They rebutted the numerical evidence by presenting evidence of revocation signatures previously unknown to Scomas.

Permitting General Counsel to rebut the numerical evidence by presenting revocation signatures which the Union had kept secret from Scomas was neither contemplated nor envisioned by Counsel Rosenfeld or *Levitz*. In fact, in *Levitz*, the Union actually told the employer it had regained majority support, but the employer ignored that information.

In *Wilson & Co. vs. NLRB* 162 F. 2d 310 (1947) (8th circuit Court of Appeal), the employer presented evidence at the unfair labor practice hearing of employee signatures disavowing the union. However, these signatures had been "hidden" from the Union and the NLRB until offered in evidence at the hearing.

The Board rightly declined to accept this as evidence of a loss of majority and a revocation of the designation of the union as bargaining agent. The Board concluded that the evidence brought to its attention in that manner should not be accepted as of sufficient weight to overthrow and annul the result of a legally held secret ballot election.

It is inferred that *Wilson* disregarded this evidence under equitable principals ("He who comes into equity must come with clean hands"). Because the employer engaged in "gamesmanship" and did not share this evidence with the Board and Union, they could not then benefit from it.

    3.   *Levitz* Should Be Made to Comply with the Purposes of the Act. The primary purpose of the Act is "to compel employers to bargain collectively with their employees to the end that an employment contract, binding on both parties, should be made," S. Rep. No. 106, 80th Cong., 1st Sess. 15 (1947), *quoted in Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 453, 1 L. Ed. 2d 972, 77 S. Ct. 912 (1957). To effectuate this primary purpose, one aim of the National Labor Relations Act is to provide employees with a real opportunity freely to select their bargaining representative. This can only be done if an employer is absolutely certain who the employees have chosen to be their bargaining representative.

In this case, Scomas was absolutely certain that the employees had rejected Unite Here Local 2085 as their bargaining representative. Scomas therefore

withdrew recognition and refused to bargain with the Union in <u>absolute good faith</u>. This was shown at the hearing.

However, the fact does remain that at the time of withdrawal, 6 of the 29 signatures on the decertification petition had been revoked in the two days before Scomas withdrew recognition. Certainly, requiring the Union to notify the employer prior to any withdrawal is unworkable---this would presuppose that the Union must always be one step ahead of the employer and anticipate an employer's unilateral withdraw. (See *NLRB vs. HQM of Bayside*, LLC 518 F.3d 256, (4th Cir. 2008) "The Union does not have to demonstrate conclusively to the employer <u>prior</u> to withdrawal of recognition that it still has majority status." (Emphasis added)).

What then can be done?

Both Chairman Battista in *Parkwood Developmental Center* 347 NLRB 974, 975 fn. 8 (2006) and Member Johnson in the instant case suggest imposing on the Union an affirmative duty to notify an employer of reacquired majority support <u>after</u> withdrawal of recognition.

This new obligation is eminently workable, particularly if this duty is only imposed <u>after</u> withdrawal and only when an employer relies on the archetypical example of evidence of a loss of majority support---signatures on a decertification petition.

### C. Any Rule of Law that States "To Be Done at the Employer's Peril" is Arbitrary and Capricious.

What is so maddening about the rule in *Levitz* is that it continues to allow an employer to unilaterally withdraw recognition, but only at its "peril". How can an employer avoid "peril" if the Union is withholding pertinent facts? Does the Board intend this principal to be extended so far that it "smiles on gotcha"? [3]

It is important to note that in *Levitz*, and most of the cases subsequent to *Levitz,* the unions actually had disclosed reacquisition of majority support prior to the employer withdrawing recognition, and the employers ignored that evidence. *Levitz* did not envision or even touch upon a situation in which the union possessed but <u>intentionally</u> withheld from the employer evidence that would provide doubt about the will of the employees.

The Board has expressly stated that one of the purposes of the Act is not to induce gamesmanship. *Aero Engineering Corporation and Lodge 1303, International Association of Machinists and Aerospace Workers*, *AFL-CIO*, 177 N.L.R.B. 176 (N.L.R.B. 1969) (where Board found that actions that would "constitute an inducement to 'gamesmanship' [ ] would not effectuate the policies of the Act.").

---

[3] *Johnson Controls, Inc*. Case 10-CA-151843, decided on February 16, 2016, Report and Recommendations of ALJ Keltner Locke.

If the purpose of the Act is to avoid gamesmanship, then gamesmanship must be discouraged, and not rewarded.    Clearly, the Union has engaged in gamesmanship to the *n*th degree by withholding the revocation signatures after Scomas relied on the signatures on the decertification petition.  Imposing the above affirmative duty of disclosure on the Union serves to discourage and prevent gamesmanship.

The rule of law requires that people should be governed by accepted rules, rather than arbitrary decisions of rulers.  For the Board to apply the rule of *Levitz* in this case, without considering extenuating circumstances such as the Union withholding the revocation signatures, is arbitrary and capricious.

Likewise, a public policy in which the union is entitled (and induced) to sit back on its laurels and, through no fault, misconduct or even participation of any kind by the employer, files a charge, and in stark contrast to the free choice of its members, is arbitrary and capricious.  It does nothing to foster industrial peace or stability in collective bargaining relationships. To the contrary, it foments further adversarial positions and encourages the type of shenanigans by both parties that the Act is purposed against.

## D.      Board Members Have Urged Modification of *Levitz* for the Last 15 Years.

The *Levitz* decision was not unanimous and over the years, there have been telltale signs by various Board members of a desire to revisit *Levitz*, including

affirmative statements in *post-Levitz* decisions that they are expressing no view

about the validity of its holding: *"Mastronardi Mason Materials*, 336 N.L.R.B.

1296, 1296 n.1 (2001) (Chairman Hurtgen noting that he dissented in *Levitz* but

finding that the decision was correctly applied); *Eden Gardens Nursing Home*, 339

N.L.R.B. 71, 71 n.1 (2003) (Member Schaumber only); *Badlands Golf Course*, 350

N.L.R.B. 264, 265 n.6 (2004) (Chairman Battista and Members Schaumber and

Kirsanow expressing no view as to whether *Levitz* was correctly decided); *Alpha*

*Assocs.*, 344 N.L.R.B. 742, 745 n.10 (2005) (Chairman Battista and Member

Schaumber expressing no view as to whether *Levitz* was correctly decided);

*Seaport Printing & Ad Specialties*, 344 N.L.R.B. 354, 354 n.2 (2005) (Chairman

Battista and Member Schaumber expressing no view as to whether *Levitz* was

correctly decided); *Siemens Bldg. Techs.*, 341 N.L.R.B. 1108, 1108-09, 1009 n.5

(2005) (Chairman Battista and Member Schaumber expressing no view as to

whether *Levitz* was correctly decided); *Highlands Regional Med. Ctr.*, 347

N.L.R.B. 1404, 1406 n.12 (2006) (Chairman Battista only); *HQM of Bayside*, 348

N.L.R.B. 758, 759 n.10 (2006) (Member Schaumber only); *Parkwood*

*Developmental Ctr.*, 347 N.L.R.B. 974, 975 n.6 (2006) (Chairman Battista and

Member Schaumber expressing no view as to whether *Levitz* was correctly

decided); *B.A. Mullican*, 350 N.L.R.B. 493, 494-95 (2007) (Chairman Battista

noting his substantial doubts about the continued validity of *Levitz*); *Madison*

*Indus.*, 349 N.L.R.B. 1306, 1307 n.6 (2007) (Chairman Battista and Member

Schaumber expressing no view as to whether *Levitz* was correctly decided)."

(Reference 16 NYUJ Legis. & Pub. Policy 485 (2013), pg. 8, "Trying the Carrot

and Sparing the Stick: An Incentive Based Reform Proposal for NLRB Elections,

Voluntary Recognition, and Withdrawal of Recognition, Honorable Nicholas M.

Ohanesian.)

    As noted above, one of the more helpful suggestions applicable to the facts

of the case at bar, came from Chairman Battista in *Parkwood Developmental*

*Center,* "Chairman Battista would require that the union present, within a

reasonable time, any evidence of reacquisition of majority status." This suggestion

was adopted by Member Johnson in the instant case.

    Tellingly, even the ALJ in the case at bar who ruled against Scomas stated at

the conclusion of the hearing that it was "troubling" that there is no affirmative

duty for the Union to provide notification to the Employer. (RT 214:8-13).

### E. Further Instruction Provided in *Johnson Controls, Inc.*

    In *Johnson Controls, Inc*. Case 10-CA-151843, decided on February 16,

2016, a case which concerned very similar facts to *Scomas*, ALJ Keltner Locke, in

his Report and Recommendations, pointed out flaws in the *Levitz* rule: "In other

words, the union authorization card evidence relates to the objective question,

whether a bargaining duty still existed, rather than the subjective question of

whether the Respondent acted in good faith when it withdrew recognition.  Thus,
there appears to be an asymmetry: The Board only allows the Respondent to prove
the objective fact-the Union's loss of majority support—using information the
Respondent had actually possessed, but it permits the General Counsel to challenge
the proof with evidence the Respondent had not possessed." [4]

ALJ Locke emphasized that he found that the employer acted in good faith
when it relied on the petition "because it did not know about employees signing
union authorization cards and reasonably could not have known; the Union did not
provide this information."

ALJ Locke ultimately ruled that fairness and justice required that the
evidence be examined to determine whether in fact a majority of the employees did
actually support the Union at the time the Employer withdrew recognition.
Because the testimony showed that a majority did not want to be represented, he
found the withdrawal of recognition to be lawful.

In Scomas' case, the ALJ prevented any testimony regarding this issue. (RT
156:6-13; RT 128:12-20).  Pursuant to the well-reasoned analysis in *Johnson
Controls,* this type of evidence is crucial.

---

[4] Exceptions not yet filed; case transferred to Board on Feb. 16, 2016.

### F.  Appropriate Remedy Needs to Be Aimed at Effectuating the Employees' Desire.

Petitioner was found to have violated 8(a)(5). (Order at 6).  However, Section 8 (a) (5) of the Act makes it illegal for an employer to refuse to bargain in good faith.  Clearly, Petitioner's refusal to bargain was made in the utmost good faith, and therefore, there was no violation.

 Petitioner is asking the court to find that they did not act unlawfully, or at the most, to find that their "technical" unlawful withdrawal be excused, and to impose a requirement that Unions must demand prompt re-recognition *after* withdrawal of recognition when they have in their possession evidence of re-acquired majority support which the employer does not have.

Should that have happened in this case, Scomas would have re-recognized the union, and the employees would not have withdrawn their decertification petition.  An election would then have been held to determine the intent of the employees.

Neither the public interest nor statutory policy are effectuated where the Union knowingly withheld information from Scoma's regarding the decertification petition and revocation signatures. Given the "essentially remedial" objectives of the Act, which disfavors punishment, an order to bargain would be tantamount to just that. *See International Brotherhood of Electrical Workers v. Foust*, 442 U.S.

42, 52 (1979) (where Supreme Court has refused to permit punitive sanctions in certain unfair labor practice cases, citing examples).

### G. An Election is an Appropriate Remedy.

The bargaining order made by the Board in this case is inappropriate. *Vincent Industrial Plastics v. NLRB*, 209 F.3d 727, 341 U.S. App. D.C. 99 (D.C. Cir. 2000) is clear that  when making an affirmative bargaining order, consideration must be given to  whether alternative remedies are adequate to remedy the violations of the Act.

The ultimate issue here is Scomas employees' right to be represented by a representatives of their own choosing.  By not providing any evidence of their reacquired majority support, the Union makes the resolution of this issue murky. Further, because no evidence of the signers' intent and desire to be/or not to be represented by the Union was permitted at the hearing, an examination of the testimony is not helpful.

In this case, a strict technical violation with absolutely no bad faith, malice, or intent on behalf of Scomas, the alternative remedy of an election is appropriate. Further, elections are not appropriate where th[at] remed[y] would be rewarding a party or allowing a party to profit from their own wrongdoing.  *Allied Industries vs. Bridgestone* 47 Fed. Appx. 449 (9th circuit) (2002).  Such is not the case here. Here, Somas did nothing wrong.  It would be a different situation and more akin to

*Levitz, HQM Bayside* and *Parkwood*, had the Union actually told Scomas about the cross-over signatures, and Scomas then still refused to bargain.

By ordering an election (essentially reinstating the decertification petition filed by the employees), no one is rewarded; in effect, it is merely restoring the status quo which existed prior to the Union's deliberate choice to not inform Petitioner about their reacquired majority support.

It is for this reason a bargaining order is not the applicable, or even good remedy. The Union's gamesmanship casts a unit of employees into the abyss for a period of years despite the fact that, at present, an overwhelming majority wish to decertify. Because affirmative bargaining orders interfere with the employee "free choice" that is a "core principle" of the Act, courts have long viewed them with suspicion. *See Skyline Distribs. v. NLRB*, 99 F.3d 403, 411 (D.C. Cir. 1996).

Further, while the Board did consider whether a cease and desist order would be adequate, they failed to discuss the remedial adequacy of an election as required by *Vincent Industrial Plastics v. NLRB*, 209 F.3d 727, 341 U.S. App. D.C. 99 (D.C. Cir. 2000). (Order at 7).

As stated in *Daisy's Originals, Inc. v. NLRB*, 468 F.2d 493, 503 (5th Cir. 1972), "Where the unfair labor practices found have not been determined to be "sufficiently flagrant so that an election could not be held or should be set aside under the *Gissel* rule," a bargaining order remedy to technical violations of §

- 26 -

8(a)(1) is unwarranted." (See also *NLRB v. Nu-Southern Dyeing & Finishing, Inc.*, 444 F.2d 11 (4th Cir., 1971)).

## CONCLUSION

Petitioner requests that the Court decline to enforce the Board's Order as it is inconsistent with the Act. Petitioner further requests that the Court impose an affirmative duty on a Union to notify the Employer of reacquired majority support after a unilateral withdrawal of recognition. Should the Union fail to do so, the Employer will be found not to have acted unlawfully.

Dated:  March 11, 2016

SMITH DOLLAR PC

By_____

SMITH DOLLAR PC
Attorneys at Law
DIANE AQUI, Bar No. 56287
404 Mendocino Avenue, Second Floor
Santa Rosa, California 95401
Telephone:  (707) 522-1100
Facsimile:  (707) 522-1101

Attorney for Petitioner SCOMAS OF
SAUSALITO, LLC

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [7,216]words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[ ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2010*] in [*14pt Times New Roman*]; *or*

[ ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated:  3-11-16

_____

*Counsel for Petitioner/Cross–Respondent*

513696

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 11th day of March 2016, I caused this PAGE PROOF BRIEF OF PETITIONER/CROSS–RESPONDENT to be 1) filed electronically with the Clerk of the Court using the CM/ECF System and 2) mailed via U.S. Mail to the addresses listed below, following ordinary business practices:

Linda Dreeben
Jill Griffin
Heather Beard
Deputy Associate General Counsel
1015 Half Street, SE
Washington, DC 20570

Kristin L. Martin
Davis, Cowell & Bowe, LLP
595 Market Street, Suite 1400
San Francisco, CA 94105-2821

Glenn M. Taubman
National Right to Work Legal Defense
Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, VA 22160

Sarah McBride
Joseph F. Frankl
United States Government, National
Labor Relations Board
Region 20
901 Market Street, Suite 400
San Francisco, CA 94103-1738

Linda Dreeben
Jill Griffin
Heather Beard
Deputy Associate General Counsel
1015 Half Street, SE
Washington, DC 20570

_Counsel for Petitioner/Cross–Respondent_